UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SALOM ENTERPRISES, LLC.

                Plaintiff,                Case Number 06-13166
v.                                                Honorable David M. Lawson

TS TRIM INDUSTRIES, INC.,

                Defendant.
_____/

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, ORDERING DEFENDANT TO ANSWER COMPLAINT, AND SETTING DATE FOR CASE MANAGEMENT CONFERENCE

Defendant TS Trim Industries, Inc., an Ohio corporation that does not regularly conduct business in Michigan, has filed a motion to dismiss this case for want of personal jurisdiction. The plaintiff's complaint alleges several tort counts related to a piece of manufacturing equipment the defendant furnished to it, and another pair of counts sounding in contract and quasi-contract arising from the sale of its assets to the defendant. The defendant contends that it did not have sufficient contacts with Michigan to require it to defend a lawsuit here. It also claims that the plaintiff has no standing to bring this suit because it is not registered to do business in Michigan. The plaintiff argues that the defendant conducted enough business in Michigan to warrant the exercise of both general and limited personal jurisdiction over it, and it may proceed with this action because it has registered with Michigan authorities since the filing of this lawsuit, as state law permits. The Court heard oral argument on the motion on November 20, 2006. The Court now finds that the plaintiff has standing to proceed under Michigan law, the defendant does not have sufficient contacts with Michigan to justify general personal jurisdiction, and there is limited personal jurisdiction over the contract and quasi-contract counts but not over the tort counts. The Court, therefore, will grant the defendant's

motion in part and dismiss the tort counts without prejudice; the plaintiff may proceed on the remaining counts.

I.

The plaintiff, Salom Enterprises, LLC, is a limited liability company organized under Texas law. It had not registered to conduct business in Michigan until this lawsuit was started, and it presently is in a windup phase. Most of its operations were conducted in Texas and Mexico, but since it began winding up its affairs its operations have taken place in Michigan. TS Trim Industries, Inc. is an Ohio corporation with its principal place of business in Canal Winchester, Ohio. It is not registered to conduct business in Michigan either, but it has dealt with a Michigan entity in the past.

Both the plaintiff and the defendant are automotive suppliers. According to the plaintiff, Salom manufactured leather armrests, which it provided to TS Trim, who in turn supplied the component to American Honda in Ohio. This relationship expanded when the defendant offered the plaintiff the work for a cloth armrest project for American Honda. In order to produce the cloth armrest in conformity with Honda's time and volume demands, the plaintiff needed a certain machine, which the defendant agreed to provide. The plaintiff alleges that the defendant represented that the machine was capable of producing the required parts at a volume and rate that would be sufficient to comply with American Honda's production demands. None of these negotiations occurred in Michigan, and the TS Trim machine was installed in the plaintiff's plant in Mexico without ever passing through Michigan.

Apparently the machine failed to perform as represented, and the defendant sent employees to the plaintiff's Mexico facility to correct the machine, without success. Because the machine

underperformed, the plaintiff alleges that it had to incur significant extra expense to meet American Honda's production deadlines. It appears that the plaintiff could not absorb the added expense, and the resulting cash-flow problems caused it to cease operations and begin winding up its business. The failure of the machine to perform as represented forms the bases of five counts of the present complaint, which allege breach of implied and limited warranties (count 3); breach of express warranties (count 4); breach of implied warranties of fitness for a particular purpose (count 5); breach of implied warranties of merchantability (count 6); and fraud and misrepresentation (count 7).

According to the affidavit of Eugene Brockhaus, one of the operating members of Salom, Brockhaus traveled from Michigan to TS Trim's Ohio office in March 2006 to inform TS Trim's representatives that it could no longer meet the cloth armrest production demands. TS Trim offered to purchase certain assets and inventory of Salom, and negotiations ensued, which resulted in an agreement calling for payment by TS Trim to Salom of slightly more than $200,000. Brockhaus also avers that the negotiations were made through a consultant Salom engaged located in Michigan, and that telephone calls were placed to and from Salom's Michigan office. The plaintiff alleges that TS Trim wired some of the funds to Salom's bank in Michigan, but it still owes $100,000, which it refuses to pay. That failure to pay is the basis of counts 1 (breach of contract) and 2 (unjust enrichment) of the complaint.

Brockhaus also states in his affidavit that when it was producing leather armrests for TS trim, TS Trim required it to buy leather from a Michigan company, and that TS Trim guaranteed Salom's account to the leather supplier. According to Brockhaus, Salom notified its customers in mid 2004 that it had changed its mailing address to Michigan, presumably from Texas. Brockhaus says that

TS Trim paid its invoices by sending funds to Salom in Michigan, and TS Trim dealt with Salom's sales representative who was located in Michigan.

The plaintiff filed its seven-count complaint on July 12, 2006. On August 28, 2006, the defendant responded with the present motion to dismiss for lack of standing and lack of personal jurisdiction. The plaintiff applied for and received a certificate for authority to conduct business in Michigan on September 13, 2006.

## II.

### A.

The first part of the defendant's motion invokes the Michigan business registration statutes. Section 450.5007(1) of the Michigan Compiled Laws states:

> (1) A foreign limited liability company transacting business in this state without a certificate of authority shall not maintain an action, suit, or proceeding in a court of this state until it has obtained a certificate of authority.

The statute contains a savings provision, which allows a delinquent business to obtain a certificate of authority after the fact and save its lawsuit. The statute continues:

> (2) An action commenced by a foreign limited liability company having no certificate of authority shall not be dismissed if a certificate of authority is obtained before the order of dismissal. Any order of dismissal shall be without prejudice to the recommencement of the action, suit, or proceeding by the foreign limited liability company after it obtains a certificate of authority.

Mich. Comp. Laws § 450.5007(2).

There is no dispute that the plaintiff had no certificate of authority to transact business in Michigan on July 12, 2006 when it filed its lawsuit. The defendant does not dispute the fact that the plaintiff obtained its certificate in September 2006, well before any order of dismissal has entered.

The defendant argues, however, that the Court should not accept the certificate because it is a sham, since the plaintiff no longer is conducting business of any kind save the wind-up of its affairs.

All of this ignores the statutory language that directs the thrust of the statute to actions in state courts, not federal courts. The Sixth Circuit has observed that "standing is a matter of federal law, not state corporate law." *City Communications, Inc. v. City of Detroit*, 888 F.2d 1081, 1086 (6th Cir. 1989). In *City Communications*, the court held that a corporation that was dissolved automatically during the litigation for failure to file its annual report and pay the filing fee required by Michigan law could maintain its lawsuit because it continued as a *de facto* entity until it cured its default and was reinstated. The court stated that "federal jurisprudential concerns, not state corporate law, determine a party's standing," and that "in evaluating a party's standing, we must look past mere labels to determine 'whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *Id.* at 1088 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). The court concluded: "Just as a corporate charter does not automatically confer standing, temporary revocation of that charter does not deprive a party of standing." *Ibid.*

In this case, the plaintiff was and continues to be a valid Texas business entity. It has satisfied the jurisdictional and prudential requirements of standing under Article III's "case and controversy" clause. *See Grizzel v. City of Colombus Div. of Police*, 461 F.3d 711, 718 (6th Cir. 2006) (noting the three jurisdictional requirements are an injury in fact, a causal relationship to the defendant' alleged conduct, and the likelihood of redress from a favorable decision). The plaintiff has satisfied the standing requirement for maintenance of a lawsuit in federal court.

Moreover, the saving section of the Michigan business registration statute explicitly states that the plaintiff may cure its default by obtaining a certificate and paying the required fees at any

time before an order of dismissal issues. At oral argument, the defendant called attention to Michigan Complied Laws section 450.5008, which contains a list of activities that do not constitute conducting business in the state. The list includes maintaining a lawsuit, collecting debts, and owning property, which is all that the plaintiff is presently doing in Michigan, according to the defendant. The defendant insists, therefore, that the plaintiff is not eligible to obtain a certificate of authority to do business here. That argument, however, would require the Court to look beyond the plain language of the registration statute, which on its face requires only that a certificate be obtained as a condition of maintaining a suit. *See* Mich. Comp. Laws § 450.5007(1), (2). The statute does not require or permit the Court to look behind the certificate itself. The purpose of these statutes is to ensure that business entities make known their representatives who will receive process, and "to enforce payment of fees and compel compliance with statutory duties." *Michigan Rural Dev. v. El Mac Hills Resort,* 34 Mich. App. 505, 509, 191 N.W.2d 733, 735 (1971) (referring to a corporate registration and reporting statute). Although the plaintiff may owe the state more fees for the years it says it conducted business in Michigan as an unregistered entity, *see* Mich. Comp. Laws § 450.5007(5) & (6) (stating that "[a] foreign limited liability company that transacts business in this state without a certificate of authority is liable to the state for the years or parts of years during which it transacted business in this state without a certificate in an amount equal to all fees that would have been imposed under this act," and "[a] foreign limited liability company that transacts business in this state without a certificate of authority is subject to a civil penalty, payable to the state, of not less than $100.00 nor more than $1,000.00 for each calendar month. . . . Each manager, member, or authorized person who authorizes, directs, or participates in the transaction of business in this state on behalf of a foreign limited liability company that does not have a

certificate is subject to a civil penalty, payable to the state, not to exceed $10,000.00"), the statutory scheme does not authorize other sanctions such as a bar to access to the courts once the default is cured.

The Court finds that the plaintiff has standing to bring its claims and it has cured its registration default as required by Michigan Compiled Laws section 450.5007.

B.

In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Because this Court is relying only on the pleadings and affidavits of the parties, the plaintiff "need only make a prima facie showing of jurisdiction." *Ibid.* (internal quotation omitted). In the absence of an evidentiary hearing, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Ibid.* As this Court has explained previously:

> "In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment." *Bagsby v. Gehres*, 195 F. Supp. 2d 957, 961 (E.D. Mich. 2002) (citing *Neogen Corp.*, 282 F.3d at 888). In Michigan, jurisdiction over the person can exist on the basis of general personal jurisdiction, *see* Mich. Comp. Laws §§ 600.701 and 600.711, or limited personal jurisdiction, *see* Mich. Comp. Laws §§ 600.705 and 600.715.  General personal jurisdiction exists over any corporation that is incorporated in Michigan, consents to jurisdiction, or engages in continuous and systematic business in Michigan. Mich. Comp. Laws § 600.711. Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum, but only over claims which arise from or relate to those contacts. *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991). However, even a single contact with the forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998).

*Lafarge Corp. v. Altech Environmental USA*, 220 F. Supp. 2d 823, 827-28 (E.D. Mich. 2002).

1.

The plaintiff has not alleged that the defendant is incorporated under Michigan law or that it has consented to the exercise of personal jurisdiction over it. Therefore, the only question about the application of general personal jurisdiction is whether the defendant carries on continuous and systematic business within the State of Michigan. The complaint alleges only that the defendant conducted business with a leather supplier located in Michigan for the raw materials the plaintiff used to make leather armrests at its Mexico plant and guaranteed the plaintiff's account to the supplier. The plaintiff also alleges that the defendant negotiated with the plaintiff's representatives in Michigan for the asset and inventory purchase. These contacts are isolated and occasional. There are no allegations that the defendant was physically present in the state, retained agents to represent it here, solicited sales or other business here on a regular basis, or derived any substantial revenue from business conducted in the state. The defendant did not advertise or project its presence through direct mail or electronic communication. *Compare Michigan Nat. Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 465 (6th Cir. 1989). There is no evidence that the defendant directed its activity at this forum in any continuous or systematic way. *See Nationwide Mutual Ins. Co. v. Tryg International Insurance Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996) (citing *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1045-46 (2d Cir. 1991) (holding that thirteen business trips of short duration over the course of eighteen months did not constitute "continuous and systematic" solicitation of business in the State of New York)). The Court finds no basis for the exercise of general personal jurisdiction over the defendant.

2.

The exercise of limited personal jurisdiction in Michigan diversity cases is governed in part by the state's "long arm statute," which contains a list of activities that will subject a corporation to the exercise of limited personal jurisdiction by Michigan courts. It includes transacting "any" business within the state, doing an act or causing consequences to occur in Michigan, owing or using tangible personal property in the state, insuring a risk within the state, and entering into a contract for services or materials within the state. Mich. Comp. Laws. § 600.715. If the provisions of the long-arm statute are deemed met, the Court then must determine whether an assertion of jurisdiction over the defendants would comport with the notions of fundamental fairness required by the Due Process Clause. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

a.

Although the plaintiff has not specified the sections of the Michigan long-arm statute upon which it relies to assert limited personal jurisdiction over the defendant, it appears that the only provision that applies in this case is the transacting of any business within the state. The Michigan Court of Appeals has broadly defined the concept of transacting business:

> The phrase "transaction of any business" is not defined in the statute. Therefore, it is proper to rely on dictionary definitions in determining the meaning of that provision. *Popma v. Auto Club Ins. Ass'n,* 446 Mich. 460, 470, 521 N.W.2d 831 (1994). "Transact" is defined as "to carry on or conduct (business, negotiations, etc.) to a conclusion or settlement." *Random House Webster's College Dictionary* (1997). "Business" is defined as "an occupation, profession, or trade . . . the purchase and sale of goods in an attempt to make a profit."

*Oberlies v. Searchmont Resort, Inc.*, 246 Mich. App. 424, 430, 633 N.W.2d 408, 413 (2001) (holding that extensive marketing efforts directed toward Michigan consumers satisfied Mich. Comp. Laws § 600.715(1)). The extent of the defendant's business activity in Michigan, according to the plaintiff, amounts to guaranteeing the plaintiff's account to the leather supplier, wiring

-9-

payments to the plaintiff's bank account here, and calling the plaintiff's representatives in Michigan to complete the negotiation of the asset and inventory purchase agreement. This list does not represent a great deal of contact with the forum state, but the defendant's business dealings in Michigan need not have been extensive or prolonged, since the Michigan statute allows "any" business dealings to suffice, and "any" includes even the slightest amount. *See Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623, 624 n.2 (1971).

TS Trim asserts without rebuttal that it has never had a physical presence in Michigan, and none of its personnel ever traveled here. However, "[n]either the presence of the defendant in the state, nor actual contract formation need take place in the forum state for the defendant to do business in that state." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 907 (6th Cir. 1988). As the Supreme Court observed in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." A defendant who is not physically present in a state may conduct business there.

The Court believes that the plaintiff has established a *prima facie* showing that TS Trim has conducted business in Michigan within the meaning of Michigan Complied Laws section 600.715(1). According to Brockhaus's affidavit, the defendant sent orders to the plaintiff in Oakland County, Michigan, forwarded payments to the plaintiff in Oakland County, Michigan, and made payments by wire transfer into the plaintiff's Comerica Bank account in Detroit. With respect to the agreement that forms the basis of the breach of contract action, the plaintiff alleges the defendant telephonically negotiated the terms of the contract and consummated the deal with the plaintiff's

-10-

agents, all the while knowing that the plaintiff's agents were located in Michigan. The plaintiff has satisfied the statutory component for the exercise of limited personal jurisdiction.

b.

Underسixth Circuit law, the district courts determine compliance with the Due Process Clause under the following test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Neogen*, 282 F.3d at 890 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). "Purposeful availment" is found when "the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Ibid.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Ibid.* (quoting *Burger King Corp.*, 471 U.S. at 475). On the other hand, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal quotation omitted).

The Supreme Court explained in *Burger King v. Rudzewicz* that the purposeful availment requirement addresses the protection provided by the Due Process Clause of an individual's liberty interest in not being subjected to binding judgments of a foreign jurisdiction absent "fair warning" that its activity may bring them within the authority of those courts. *Burger King*, 471 U.S. at 471-

72. In the context of limited personal jurisdiction, this "fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 472 (internal quotation and citation omitted). As concerns interstate contractual obligations, the Court "emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions in the other state for the consequences of their activities." *Id.* at 473 (internal quotations omitted). In other words, when a nonresident defendant purposefully directs its activities at residents of the forum state, he opens the door to the assertion of jurisdiction. *Ibid.* However, it is the *defendant's* purposeful action that is determinative: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Id.* at 474 (internal quotations omitted).

In this case, the plaintiff has alleged sufficient facts to show purposeful availment by the defendant. By contacting Michigan residents to secure the asset purchase contract, the defendant knowingly availed itself of the privilege of conducting business in Michigan. Through its negotiation of the contract, the defendant bound itself to pay money to an entity that it should have known was operating in Michigan. By doing this, the defendant deliberately engaged in significant activities in the forum state, making the exercise of jurisdiction presumptively reasonable. *Burger King*, 471 U.S. at 475-76.

The requirement that the causes of action arise from the defendant's contact with the state demands close analysis in this case because the several causes of action rightly can be divided into two phases or groups. The operational activity involved the procurement of the armrest production

machine; the claims arising from that activity are based on representations as to the production capability of the machine. The windup activity focuses primarily on the sale of the plaintiff's inventory and assets after production ceased. In order to satisfy the Due Process Clause – that is, to determine that it would be fair to require the defendant to litigate either of these claims in this forum – the plaintiff must show that each of its groups of causes of action arose from the defendant's activity here.

Although the Sixth Circuit has not addressed the issue, other jurisdictions have held that the exercise of limited personal jurisdiction over a defendant is claim specific. *See Remick v. Manfredy*, 238 F.3d 248, 256-59 (3d Cir. 2001) (holding that the district court had limited personal jurisdiction over this defendant concerning a claim for breach of contract, but not with respect to a defamation claim); *Phillips Exeter Academy v. Howard Philips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999) (commending district court's claim-specific analysis). That analysis is sensible, given that a primary purpose of the protection provided by the Due Process Clause is to give individuals "fair warning that *a particular activity* may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment) (emphasis added); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1463 n.4 (6th Cir. 1991) (stating that "limited personal jurisdiction confers power upon the court to enter personal judgments against the defendant only upon claim(s) which arise out of the acts establishing the jurisdictional connection between the defendant and the forum").

The court of appeals addressed the "arising from" component of the test in *Lanier v. American Board of Endodontics*, 843 F.2d 901, 908-09 (6th Cir. 1988). There, a female dentist sued the Illinois-based American Board of Endodontics alleging that she was denied a license by the

Board on the basis of gender. The Board filed a motion to dismiss, arguing that it had insufficient minimum contacts with the State of Michigan. The court of appeals disagreed. After finding the Board had transacted business within Michigan by exchanging correspondence and telephone calls with the plaintiff, in addition to collecting her application fee, the court found that the plaintiff's cause of action arose out of those business transactions. Two possible theories defining the "arising from" requirement were considered: one was whether the business transactions "made possible" the cause of action, and the other was whether the cause of action arose in the "wake" of the business transactions. Applying both theories, the Court held that the discrimination was made possible and occurred in the wake of the plaintiff's filing of her application, which the Court previously had found to constitute the transaction of business in Michigan by the Board. *Id.* at 908-09.

The court found that the application process, evaluation, testing, and rejection were part of a "mosaic of activity," "every step of which was a constituent part of the whole." *Id.* at 908. The court reasoned that if the defendant discriminated against Dr. Lanier on account of her gender, it "must have done so, based at least in part, upon what it learned about her from its professional business contacts with her in Michigan during the very earliest stages of the application process." *Id.* at 909. Because those contacts made possible the rejection and concomitant discrimination, and the cause of action lay in the wake of them, the court found that the claims arose from the contacts with the forum.

With respect to the operational claims in this case, the plaintiff admits that the armrest machine was shipped to and installed in the plaintiff's facility in Mexico, and the plaintiff has not contested the defendant's assertion that this machine never traveled to Michigan. The plaintiff, however, contends that the defendant misrepresented the machine's capability. It is this alleged

misrepresentation that constitutes the basis of the plaintiff's claims for breach of warranties and fraud. However, the plaintiff has not alleged any facts to show that the misrepresentation concerning the machine arose out of or had anything to do with the defendant's transaction of business in Michigan. For instance, the plaintiff has not alleged that the defendant directed oral or written communications to the plaintiff in Michigan concerning the capabilities of the machine, and, given that all of the other events concerning the subject machine took place primarily in Ohio, Texas, or Mexico, it would be impermissible to assume that the alleged misrepresentation occurred in Michigan. The Court concludes, therefore, that the operational causes of action did not arise from any contact that the defendant had with this forum, and the exercise of personal jurisdiction over it for those claims would not comport with the Due Process Clause.

The plaintiff's windup claims for breach of contract and unjust enrichment are premised on the parties' formation of a contract for the sale of certain assets and inventory owned by the plaintiff. The plaintiff alleges that in March 2006, Brockhaus traveled from Michigan to the defendant's office in Ohio to inform it that it could not meet the production obligations for the cloth armrests. It was during that meeting that the equipment and inventory deal was floated. After the meeting, Brockhaus returned to Michigan, and negotiations to complete the agreement took place between the plaintiff's representatives in Michigan and the defendant's representatives in Ohio. The plaintiff alleges that TS Trim was fully aware that the plaintiff's consultant and Brockhaus himself were in Michigan during the negotiations. It appears that the initial payment for the inventory and assets was made to the plaintiff's bank in Detroit.

The defendant's contacts to Michigan with respect to the formation of the contract form part of the "mosaic of activity" after the fashion of the application-and-rejection process described in

*Lanier*. After agreeing to pay a certain sum for the assets and inventory from the plaintiff's erstwhile manufacturing operation, the defendant defaulted on its obligation. It dealt with company representatives located in Michigan, completed negotiations of the deal with individuals having offices here, and directed the initial payments to a Michigan bank. The cause of action was made possible by the resulting agreement and it occurred in its wake when final payment was refused. Consequently, the Court finds that the windup claims arise from the defendant's contacts with Michigan.

The third part of the test under the Due Process Clause requires the plaintiff to show that "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Neogen*, 282 F.3d at 890. The reasonableness of asserting jurisdiction is assessed by considering "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest in other states in securing the most efficient resolution of controversies." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (internal quotation omitted). The burden on the defendant in litigating in this forum is reasonable given the fact that the defendant negotiated a contract with an entity that, although organized under the laws of Texas, was largely based in Michigan by the time the negotiations occurred. The defendant agreed to pay a substantial sum of money to the plaintiff knowing that the plaintiff was based in Michigan, and, according to Brockhaus's affidavit, it would appear the contract contemplated the defendant forwarding these payments to the plaintiff in Michigan. This forum has an interest in adjudicating the claims of entities winding up their affairs here and seeking to pay creditors. The plaintiff manifestly has an

interest in obtaining relief in this forum, and there are no competing interests of other states in this dispute that would render the exercise of jurisdiction unreasonable.

The Court finds, therefore, that the plaintiff has made a prima facie showing of limited personal jurisdiction over the defendant with respect to its breach of contract and unjust enrichment claims.

### III.

Based on the allegations in the complaint and the affidavits submitted, the Court finds that the defendant does not have a presence in Michigan that supports the exercise of general personal jurisdiction over it; however, the defendant's minimum contacts with the plaintiff in Michigan allow limited personal jurisdiction over the defendant with respect to the contract and quasi-contract claims (counts 1 and 2) only. The tort claims related to the manufacturing equipment operated at the Mexican plant (counts 3 through 7) will be dismissed. Further, the plaintiff has complied with the Michigan business registration statute and may proceed with its lawsuit in this Court.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt #4] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that counts three through seven of the complaint are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the defendant shall file its answer to the complaint on or before **December 11, 2006**.

It is further **ORDERED** that counsel for the parties shall appear for a Case Management and Scheduling Conference held at U.S. District Court, 231 W. Lafayette Blvd, Chambers 802, Detroit, Michigan 48226 on **December 18, 2006 at 3:00 p.m**.

Counsel shall prepare and serve on opposing counsel and the Judge's chambers, **ONE WEEK PRIOR TO THE CONFERENCE**, a short statement that:

- Summarizes the background of the action and the principal factual and legal issues;

- Outlines the proposed discovery;

- Describes any outstanding or anticipated discovery disputes, and the basis you have for any objection;

- Discloses insurance available to satisfy part or all of a judgment, including indemnification agreements; and

- Proposes an appropriate management plan, including a schedule setting discovery cut-off and trial dates.

Counsel are encouraged to discuss their statements prior to the conference. This statement **shall not** be filed with the Clerk of the Court. If counsel have met pursuant to Fed. R. Civ. P. 26(f), your proposed discovery plan may be filed in lieu of these statements, supplemented as necessary to provide the above information.

Counsel shall be prepared to discuss the following items at the conference,:

    A.    The issues and narrowing the issues;

    B.    Subject matter jurisdiction;

    C.    Relationship to other cases;

    D.    Necessity of amendments to pleadings, additional parties, third-party complaints, etc.;

    E.    Settlement, including alternative dispute resolution;

    F.    Progress of discovery (counsel are instructed to commence significant discovery prior to the conference);

    G.    Issues which may appropriately be resolved by motion; and

    H.    Estimated trial length.

**Counsel are directed to discuss with their clients case evaluation (formerly "mediation") and the prospect of obtaining authority to stipulate to be bound by the provisions of Mich. Ct. R. 2.403, including the section dealing with sanctions.** Counsel are advised to bring their calendars for the scheduling of dates.

                                            s/David M. Lawson
                                            DAVID M. LAWSON
                                            United States District Judge

Dated: November 27, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means or first class U.S. mail on November 27, 2006.

                                  s/Felicia M. Moses
                                  FELICIA M. MOSES